## Case No. 12,091.

### The ROVER.

### [2 Gall. 240.] 1

Circuit Court, D. Massachusetts. Oct. Term, 1814.

PRIZE—PROBABLE CAUSE—BURDEN OF PROOF.

1. Where there is probable cause of capture, the captors are justified, and exonerated from all losses and damages sustained by reason of the capture. What constitutes such probable cause.

See The Invincible [Case No. 7,054].

[Cited in Gala Plaid, Case No. 5,183.]

2. On a motion to proceed to adjudication, the cause is to be heard in the same manner and upon the same principles, as upon a libel by the captors; and consequently the onus probandi rests on the claimant.

3. Where, after capture, the vessel has been recaptured by the enemy, and proceeded against in a court of prize, the court will not suffer a part of the papers from such court to be read, to show, that there was no original cause of capture, unless the whole papers are produced.

[Cited in Jecker v. Montgomery, 13 How. (54 U. S.) 517.]

[Appeal from the district court of the United States for the district of Massachusetts.]

In this case, a monition to proceed to adjudication had been issued, upon the libel and suggestion of A. Wood, Jun., against the owners and commander of the private armed schooner Regulator. The respondents, in their answer, alleged that the Rover was lawfully detained upon the high seas for examination and search, and, in consequence of suspicious appearances was ordered for the nearest port of the United States; but shortly after was captured by a British brig of war, carried to Halifax, and condemned.

Mr. Pitman, for captors, after stating the causes of suspicion contended, that before calling upon the captors to proceed to adjudication, the practice required, that a claim should be given, and affidavit filed.

STORY, Circuit Justice. Usually a claim is given before a monition is taken out against the captors. But there may be an original proceeding, as in this case. There ought, however. to be an affidavit, and, on motion, the court would put the libellant upon his corporal oath.

Amory & Dexter, for libellants: (1) The capture cannot be justified on the ground of a suspected intention to violate a municipal law. Probable cause has no application to such a seizure. Little v. Barreme, 2 Cranch [6 U. S.] 170. Nor does it come within the scope of the commission, which authorizes the commander to seize only jure belli. (2) There was no probable cause, to justify the seizure as prize of war. Wood's property was sufficiently proved by the documents on board. The bill of lading expressly declares the owner of the vessel to be also owner of the cargo. (3) The libellant is entitled in damages to the value of the property at the time of the capture. It is not necessary to inquire, whether the capture by the British was a direct consequence of that by the privateer, or not. He, who takes property out of the hands of an agent appointed by the owner, and commits it to the possession of another, assumes, from that moment, the risk of its safe keeping.

Mr. Prescott, for respondents. The capture by the British was not in consequence of any act of the American captors. The vessel pursued the same course, good navigators were put on board, and every proper care was taken. Reasonable cause to believe that a municipal law had been violated is sufficient to justify the captors. The attempted distinction does not exist. Whether the seizure be as prize, or for the breach of municipal law, the property, in either case, vests in the sovereign, and the proceeding must be summary, because the seizure is on the high seas. There is no difference, in this respect, between the commissions of public and of private armed ships.

STORY, Circuit Justice. The common law authorizes every individual to seize for the king, and if there be an actual violation of law, the seizor is protected. Upon this ground, it has been held, that public and private armed ships may seize for the breach of a statute. But it is at the peril of the party making the seizure.

Mr. Dexter. The commission does not extend to such a seizure.

STORY, Circuit Justice. The party, who has been guilty of illegal conduct, will not

---

1 [Reported by John Gallison, Esq.]

be permitted to claim in court. The property is of course condemned as prize of war, or as enemies' property, to the government, for want of a claim. The Walsingham Packet, 2 C. Rob. Adm. 77; The Venus, 8 Cranch [12 U. S.] 253.

Mr. Prescott. The only question then is, whether, in this case. there was probable cause to suspect a violation of law? It is contended, upon the evidence, that there was. The documentary evidence of property was deficient. Added to this, the master's prevarication, the concealment of the owner's name in the bill of lading, and the absence of the invoice, which, if on board, was not exhibited, were strong circumstances of suspicion. Murray v. The Charming Betsy, 2 Cranch [6 U. S.] 71, 122; Little v. Barreme, Id. 170; Maley v. Shattuck, 3 Cranch [7 U. S.] 489.

STORY, Circuit Justice. The schooner Rover, owned by Abiel Wood, Jun., of Wiscasset, was captured on the 17th of July, 1812, by the private armed schooner Regulator, commanded by James Mansfield. on a voyage from Liverpool in Great Britain ostensibly to Amelia Island. The Rover sailed from Liverpool about the 15th of June, 1812, having on board a cargo of British merchandise, consisting of crates, coal and hardware. Two days after the capture, the Rover was recaptured by the British sloop of war Ring Dove, and carried into Halifax, and for aught that appears has been condemned. A monition to proceed to adjudication was afterwards served upon the owners of the Regulator, at the instance of Mr. Wood, and upon the libel and proceedings in the cause the single question was, whether there was probable cause of seizure as prize. At the hearing in the district court, the learned judge pronounced a decree in the affirmative, and upon that decree an appeal has been interposed to this court.

The whole cause here turns upon a mere question of fact, the law being conceded on all sides, that if, from all the circumstances, there was probable cause of seizure, the captors are completely justified and exonerated from all consequential damages. And, in my judgment, the cause must be heard in the same manner, and upon the same principles, as if it were an original hearing upon a prize allegation; and consequently the onus probandi of showing the neutral character of the property must rest on the libellant. The Walsingham Packet, 2 C. Rob. Adm. 77; The Countess of Lauderdale. 4 C. Rob. Adm. 283; 2 Azuni, Mar. Law, p. 215, § 12. There is another reason also for this rule in the present case, which is, that the libellant, in claiming damages, is emphatically the actor. The cause too ought to be decided upon the same principles, as if all the original papers, which were submittted to the captors, were now before the court. All these papers are yet in existence, and indeed the Rover seems to have

been proceeded against in the vice admiralty court at Halifax, in whose registry the whole ship's papers and documents have been deposited. These papers are not inaccessible to Mr. Wood, for he has produced attested copies of three documents, which were delivered out by the regular officers of that court. I am called upon to admit these papers as legal evidence, for the purpose of rebutting all pretence of the legality of the capture, and to show the neutrality of the property. It would have been more fair to the parties, and certainly more satisfactory to the court, to have had an authenticated copy of all the papers. For it is very clear from the evidence before the court, that there are several papers not produced, which might have had a very important bearing on the cause. The two letters, addressed to Mr. Wood by the shipper, might have been very significant. And the answers of the master to the standing interrogatories would, in a conflict of testimony, have derived a peculiar importance, if not in chief, at least as corroborative evidence. This documentary evidence is objected to by the captors, and although, if admitted, it would. by itself. have little weight with the court, coming, as it does, in a solitary and disconnected shape, after the pressure of the other testimony was fully known, and of course the importance of the other ship's papers and documents fully established; yet, as the objection is taken, it may not be improper to express my present opinion. And I am of opinion, that, in proceedings of this nature, it is inadmissible. If the party seeks to avail himself of the supposed confession of the ship's papers, he ought to produce the whole, that a judgment may be drawn from the whole, as to his legal right to damages. He asserts, that there was no probable cause of seizure, and attempts to prove it by witnesses, and a partial production of some of the ship's papers, when he shows, that better evidence is yet behind within his own control. There is yet another reason why the whole proceedings in the prize court should have been produced, and that is. to rebut the imputation of enemy's property on board, and to prove that the libellant had sustained a total loss. In ordinary cases, a capture by the enemy might have been sufficient for the latter purpose. But in this case, under all the circumstances, it seems to me that the libellant, having access, as it should seem, to the admiralty records, ought to have gone further. Besides, if the present papers were admitted, it would not follow that they were shown to the captors; nor that other papers, as asserted in the testimony of the captors, were not on board at the time of the capture. But I decide this objection on the general rule, which appears to me to be a safe and salutary one, that the party who relies upon the evidence of the ship's papers to prove or rebut any hostile interest, ought, if they are in existence and within his control. to produce the whole, otherwise the court will not listen to

partial extracts. In so deciding, I do not mean to assert, that where property and papers are captured by an enemy, it is in general necessary to trace them further. The presumption is, that they are inaccessible, and secondary evidence is good. But if you show them within your control, you are not at liberty to withhold or present what you please. The whole must be produced, or the whole withdrawn from the cause.

I shall not, however, reject the evidence, because in my judgment the cause may well be decided consistently with the real rights of the parties upon its admission, for it is at most but a corroboration of what the master has peremptorily sworn in his deposition, and he has annexed to it a copy of the material paper, the invoice. There are two invoices of the whole cargo transmitted from the admiralty records, which are different both in items and value, the one being £1110. 3s. 6d., the other £616. 12s. What could have been the intention of this suppression and false valuation I pretend not to decide. It cannot however but lead to an inference, which I should be very loth to entertain, that there was a secret design to defraud the revenue of some country; and as duties are here calculated on the ad valorem articles on the invoice value, the conjecture would not be strained, if the United States might seem pointed at in this contrivance. I pretend not, however, to lay any great stress on it, except that if damages were to be allowed to the party, I should hold him bound by the lesser invoice. "Qui sentit commodum, sentire debet et onus."

The causes, which are now relied on by the captors to justify or excuse the capture, are the want of a clearance, the prevarication of the master, the suppression of the invoices, the want of sufficient proofs of property, the deviation from the destination apparent upon the ship's papers, and the suspicion of an intended illegal importation into the United States of British merchandise. On examining prize decisions, a great indulgence in this respect seems to have been allowed to captors, where they have acted with good faith; and in The Peacock, 4 C. Rob. Adm. 185, and The St. Antonius, 1 Act. 113, it seems to have been held a sufficient excuse that the vessel was found with a false destination, or under circumstances of deviation from her voyage. The latter case is exceedingly strong, and came by appeal from the high court of admiralty, where damages were denied, and that decision was confirmed by the lords commissioners with costs. It was the case of an English vessel, trading under a license with Holland, and found on the Dutch coast, but loitering there, so that the captors suspected an intended destination for Ostend or Dunkirk, and the license was produced at the time of capture. That the vessel, in the present case, was found out of the course of the voyage for Amelia Island, cannot admit of a doubt. The circumstance of a want of a clearance seems now fully accounted for;

but I still entertain great doubts, if this was not an irregularity at the custom house, unauthorized by law. Still, however, it was at most but an irregularity, and standing alone, it could not have justified the capture. The other circumstances are certainly sufficient. if they are proved. And in this respect there is a conflict between the testimony of the master and the captors. The master has a direct interest, as well as bias, in the cause, as he may be responsible for his own misconduct; and therefore it was peculiarly fit to have had his testimony confirmed by a full and perfect production of the admiralty proceedings. I observe too, that in respect to a material paper, which is represented to have been on board, he speaks guardedly, and in annexing what purports to be a copy, he does not pretend to verify it by any collation with the original, but simply expresses a belief as to its correctness; a belief from aught that appears, resting merely on memory of the contents. Why was not a copy of the original produced from the admiralty?

It is true also that the captor's witnesses are affected with a natural, and perhaps unavoidable, bias the other way. They have not however any interest in the present suit, for let it be determined as it may, they are free from responsibility. The testimony of Harris and Manning, in particular, is very circumstantial and minute, and after weighing all the circumstances, it appears to me that the arguments in favor of its credibility greatly preponderate over those of the master's. If they are to be believed, the conduct of the master was calculated to awaken and inflame suspicions against the bona fide character of the voyage and of the cargo. He reluctantly, and after evasions, disclosed his papers in piecemeals; and his contingent destination to the United States, even after a knowledge of the war, seems to have been drawn from him by the pressure of importunity, if not by the determination to send the vessel in for adjudication. Nor was his previous equivocation, in relation to his deviation from the voyage, calculated to lull any suspicions, which had been awakened, when a new explanation was given, founded on an asserted original destination to the United States, instead of an alteration of the course by necessity.

It should seem, too, that there were two bills of lading on board, in neither of which was there a consignment to Mr. Wood, although it would have been natural to expect one, adapted to the contingent destination to the United States. There were also two letters on board for Mr. Wood, one of which was opened, and contained no statement that the property belonged to him. We have no account of the other, but if favorable to the present claim, why has not an authentic copy been produced to the court? There was, too, a suppression of the invoice, if we credit the witnesses, and this is always so material, that its absence may well occasion a rea-

:sonable doubt of the property, especially when combined with the circumstance, that the cargo consisted of prohibited goods, found near the coasts of the United States.

Looking to all the facts of the case, as presented by the evidence, and to the absence of what must be deemed material papers, which the libellant might have produced, if they would have made in his favor, I should think myself pressing the law in relation to captures with unreasonable rigor, if I were to decree damages. I shall, therefore, affirm the decree of the district court.

Libel dismissed.